We'll begin with the first case, New York State Department of Environmental, etc., versus the Federal Energy Regulatory Commission and Millennium Pipeline Company. Good afternoon, Your Honors. May it please the Court, my name is Brian Lusignan, with the New York State Office of the Attorney General, representing Petitioner. With your permission, I'd like to reserve two minutes for rebuttal. Thank you. Fine. Your Honor, I'm going to focus on the motion for a stay in Case No. 17-3770. This Court should continue the current stay for a modest period of time while the parties brief the case on an expedited basis, and this Court resolves the merits of the Department's petition to review FERC's waiver order before Millennium constructs the valley lateral pipeline. The Department has met the four requirements necessary to establish a need for a stay. First, the Department has shown irreparable injury. Without a stay, Millennium will begin constructing the pipeline immediately and will complete construction in six months or less. Can I ask you, it would be helpful to us, I think, if you gave us, in light of the flurry of paperwork that has descended upon us, why don't you briefly explain what's going on procedurally in terms of the journey of this case through the FERC and your petition here for review? And in particular, when you finish describing the journey, tell us what relief you're asking from us, we are a motions panel. What can we do for you? Of course, Your Honor. In August of this year, FERC found that DEC had waived its authority under Clean Water Act Section 401 to grant, condition, or deny a Clean Water Act certification. The Department, as is required to do by the Natural Gas Act, immediately moved for re-hearing of that order, or timely moved for re-hearing of that order. Until FERC acted on that re-hearing order, the Department could not seek judicial review of the underlying waiver order. In October of 2017, That's a question, that's disputed, right? I don't think there's any dispute of that particular procedural nuance. Within the Natural Gas Act, Section 15 U.S.C. 717R, a party has to move for re-hearing, and FERC has to act on re-hearing before that party can seek judicial review. So in October of this year, FERC authorized Millennium to begin constructing the pipeline immediately. At that point, FERC had not acted on the re-hearing request, so the Department could not go to this Court for judicial review of the waiver order. So that's when the Department commenced Case 17-3503, which is the Writ Petition under the All Writs Act, which the relief in that case was a stay of the notice to proceed with construction, basically until FERC acted on the re-hearing request and judicial review of that first waiver order became available. In November of 2017, A stay was granted on that, right, pending the action on the motion for reconsideration, and that has now occurred. So isn't that, doesn't that kind of root out that stay, since the action on which it was premised has occurred? The stay was granted until the petition, the Writ Petition, could be resolved. And the Writ Petition remains pending before this Court. However, we agree that in light of FERC's acting on the re-hearing denial, there's no longer a need for an extraordinary writ under the All Writs Act. However, after, so after FERC denied re-hearing and judicial review became available, we immediately filed a petition for review of the waiver order and the re-hearing denial. And in connection with that case, which is 173770, we filed an emergency motion for a stay, which would essentially extend the existing stay or create a new stay, depending on how you want to look at it, until this Court could resolve the petition for review in case 173770. And it's that emergency motion for a stay that I want to focus on in this case. You're seeking now an emergency stay. That's right, of the waiver order and the re-hearing denial, which are the legal predicates for Millennium to begin construction of the bilateral pipeline before the Department grants or denies or conditions a 401 certification, basically without a 401 certification. So construction of this project is going to involve clearing a right-of-way between 75 and 135 feet, digging a trench between 5 and 15 feet deep, and putting a 16-inch natural gas pipeline into this trench and then trying to restore everything to previous condition. State water bodies will either be trenched through or drilled under, and whichever technique is used, there are certain risks to the environment. All of this will be done without a Section 401 certification, which would typically be used to mitigate or avoid violations of state water quality standards. So let me ask you if, as a procedural matter, we set down a date of argument in January that would give the parties an opportunity to address the merits and impose, in the meantime, a temporary stay. Could we not, in the fashion of district courts dealing with applications for injunctive relief, couldn't we then, in early January, have an argument on both the application for a permanent stay or whatever one calls a stay after the emergency stay, plus the merits of the petition for review? Would that achieve your objective? We think this case can be briefed and argued on a very expedited basis. We think it could be briefed by the end of January 2018 easily. With a court order, we could certainly brief it even faster than that. The merits, for the most part, have been addressed in the likelihood of success in the merits briefing already. A little cutting and pasting, right? That's not going to be a problem. That's right, Your Honor. And we're willing to proceed with expeditious briefing in this case and get this case before the court as soon as it can hear it on the merits. And on the merits, we've established a likelihood of success here. FERC's conclusion that Section 401 unambiguously begins with- Excuse me. Before you get to the merits, the interveners have raised a jurisdictional question, but I take it that neither you nor FERC, nor anyone except the interveners, sees a jurisdictional flaw in the FERC ruling. Is that correct? That's correct, Your Honor. The jurisdictional issue was resolved in a separate FERC order that DEC did not seek a hearing on that issue and cannot seek review of that issue. Whether the interveners will pursue a separate case to challenge that, I do not know. And one other question before you get to the merits, the likelihood of success. If we were to disagree with you about the stay but expedite along the very tight schedule that we just discussed, what does that-is it your position that your client's potential for irreparable injury remains the same, or would it be moderated by a more expedited hearing schedule? We think it would stay the same, Your Honor, because if the stay is lifted, Millennium will be out there tomorrow clearing trees, digging trenches, beginning the work to construct this pipeline. And Millennium has told FERC that it can complete this pipeline in six months. So even on an expedited schedule, we think irreparable harm would occur early on in that process. And once it occurs, once the pipe's in the ground, essentially, it does more damage to try to take the pipe back out than to just leave it there. So we would be irreparably harmed by that. And it not only causes environmental harm, but undermines the state role under Section 401. As this court recently recognized in the Constitution Pipeline case, Section 401 authorizes the states to conduct an independent environmental review of federally approved projects that may impact state water quality. So you've reserved time, and you can even add the three minutes pending on your first segment. I think we have a general idea of what you want on this motion. And let's see whether the other side is agreeable to an expeditious briefing schedule and argument on the merits. Thank you, Your Honors. Thanks. Mr. Solomon? May it please the Court, Robert Solomon for the Federal Energy Regulatory Commission. The emergency motion for stay should be denied, and the administrative stay should be extinguished as quickly as possible. Judge Cabranes, the Commission would consent to expedited briefing. Procedurally, this case is complicated by the fact that there are two pairs of FERC orders. There's the waiver order and the waiver rehearing order, which has been presented to this court. There's also the certificate order and the certificate rehearing order, which has not yet been presented to either the D.C. Circuit or the Second Circuit. The State of New York cannot petition for review of the certificate orders because it petitioned for rehearing too late and failed to satisfy a jurisdictional prerequisite, but the landowners can. Let me ask you a very primitive procedural question. Is it possible, in your view, to consolidate the two cases that we have before us and somehow bring up to us for consideration also this other case that is lurking? Well, this court can certainly consolidate the two petitions, the New York petition from the finding of waiver and the Millennium petition from the State denial of the 401 certificate. With respect to the third petition for review, which has not yet been filed and may not be filed by the landowners, the landowners have a statutory right under 15 U.S.C. 717R to either petition in the D.C. Circuit or the Second Circuit. The statute is drafted with particularity. Petitions for review of FERC orders arise under 717R subsection B. Petitions for review of non-FERC actions arise under 717R subsection D. Let me come at this from a slightly different angle. This other putative petition for review or case, which has not yet been filed, do we know what the intentions of the relevant parties may be? Well, I think we know what the arguments those relevant parties can make because they are bound by the arguments that they presented to the agency on rehearing. And the arguments that were raised in the intervener landowner brief to this court really do not go to the waiver orders themselves. They go to the commission's decisions in the certificate orders. I heard a reference to the jurisdictional issue. That is not an issue that was addressed in the waiver orders. That was an issue that was addressed in the certificate orders. So let me put it in still a different way. If we proceeded on an expedited schedule, as the state would certainly agree to, as we've heard this afternoon, and assume for the argument only that by January we have completed full briefing on these consolidated cases here and hear oral argument and act quickly with a decision, what effect would that process and those decisions have on the case that's lurking or inchoate at this point? It would have little effect on either the inchoate case or New York's alleged harm here. I heard references to trench digging, but for purposes of the Clean Water Act, the commission took measures working with the pipeline applicant to develop mitigating conditions. Those are found in the certificate order. Let me ask you about that, actually, because I was struck by the commission's phrasing that there was temporary harm and there were mitigation measures in place, but that was kind of outside the context. Those were relative judgments outside the context of any absolute statement about the gravity of the harm. Was that intended to imply that the potential harm was marginal or minimal? And then reduced from that point or something else? Well, yes, it was intended to mean that the alleged harm is reduced and minimal. And in particular, while there's concern about putting pipe in the ground, pipe will not be placed in any sensitive water bodies. Working with the pipeline applicant and with the New York State Department, the commission in the certificate orders developed mitigation conditions that provide for trenchless, underground, horizontal, directional drilling and boring. But I understood this was a network of watercourses that were minor in a wetlands area as opposed to any major water body, and so there's a factual dispute about whether the horizontal digging will impair that. And, again, I was struck by the notion that there are mitigation measures without kind of an assessment overall of the kind of impact that one might fear. Well, I think there was an assessment overall, and for purposes of issuing the certificate, the agency has a responsibility to balance and weigh public benefits versus any adverse, unmitigated effects. And what the commission found was with the conditions that Millennium agreed to abide by and with additional conditions that the commission attached to its certificate order, any effects would be minimal and insignificant. Again, we're not dealing with NEPA writ large. We're dealing with the Clean Water Act. We're dealing with water quality. And the commission took measures to make sure that sensitive water bodies were avoided to the extent possible, but where water bodies and wetlands cannot be avoided and when those water bodies are sensitive, that the pipeline undertakes construction techniques, trenchless techniques that minimize any adverse effect to water quality. Minimal and minimized. Minimal and minimized, including route modifications. The New York State Department was a participant in the FERC certificate proceeding, provided comments on our environmental assessment, worked with the pipeline and with the agency for purposes of developing mitigation conditions, and the state does not identify any deficiency with the conditions that the commission actually adopted in this case in the certificate orders. Now, as you know, we have a couple of motions pending to intervene. Do you have any objection to our granting those motions? We do not. The landowners were participants in both the certificate proceeding and the waiver proceeding. By granting those motions, we would be granting Millennium's motion to intervene and the Move-In's motion. That's Sarah Burns, Amanda King, Melody Bruhn, Bruhn Living Trust, Pramila Malik, Malik, and Protect Orange County. Yes. No problem with including them. No problem with including them, but I do want to point out again, as the commission said in the waiver rehearing order, that the intervener landowners are raising issues that go primarily to the commission's decision in the certificate proceeding, not in the waiver proceeding, and the appropriate venue for obtaining judicial review of the landowner issues is not on review of the waiver orders. Rather, it's on review of the certificate orders. And the certificate orders are where exactly? They are nowhere right now. The petitioners have 60 days from the November 16th issuance of the certificate rehearing order. Sometimes this is complicated when you have multiple potential petitioners for review. That's not a complication here. New York cannot petition for review of the certificate order. The landowners can, and they're the only parties that can. There are no other parties that can petition for review of the certificate order. How and when would the certificate order proceeding be concluded? It would be concluded as quickly as either the Second Circuit or the D.C. Circuit decided to conclude that proceeding. But where is it as far as we're concerned? Well, it hasn't been filed yet, and I don't know if the landowners will file a petition for review. I think they will because they filed an intervener's brief here raising the same issues they can and should raise on review of the certificate. So in some sense their interests are adequately or fully represented in these cases. Or at least their voice will be heard with respect to their interests. Yes, definitely. And the final thing I want to point out is 717R subsection B, the judicial review provision of FERC orders, they are typically not expedited. This court can do whatever it wants to do. Whereas petitions for review that arise under 717RD from non-FERC decisions are by statute expedited. So Congress actually did anticipate a category of cases for which expedition is necessary, those concern review of state and other federal agency decisions, not the FERC. With respect to FERC review, that arises in the normal course under subsection B. All right. We'll hear from Ms. Stetson now. Thank you very much. Thank you. Thank you, Your Honors. May it please the Court, Kate Stetson representing Millennium today. Judge Cabranes, I'd like to start with your process question, and then, Judge Carney, I also want to be sure to talk about your question on harms. With respect to process, here is what we could agree to. We, of course, could agree to expedited briefing, but we would not be in a position to agree to continue the stay through January through a decision. So I think what we would be looking at instead is, I think, Judge Livingston, your formulation. You asked Mr. Lusignan if we disagree with you, decline to stay, and expedite briefing. What then? We would certainly be happy to operate under an expedited briefing schedule, but the reason that we could not accept a continued stay is because of the timing exigencies that our opposition to the petition and to the motion describes. One of the very narrow apertures that we are trying to fit construction within has to do with a bald eagle's nest. And as we explain, there's a declaration by Mr. Zimmer that is attached to our opposition. And one of the things that Mr. Zimmer explains, if you look at paragraphs three through seven, he says the Fish and Wildlife Service guidelines with respect to bald eagles forbid us from constructing or having any operations within over 600 feet of that nest during breeding season, which starts on January 1st. So that aperture- I understood that there's some reference in the record to the eagles being there now. And so as a matter of fact, the disruption would already be happening. Is that wrong? I think there is a reference in the intervener's briefing to the eagles being there now. There hasn't been, I think, a confirmation from Fish and Wildlife. For Fish and Wildlife's purposes, though, the reason that the guidelines key off of breeding season is that that is when the construction is prohibited. So the presence of the eagles and the breeding season are actually two different questions. But that is why we can't accept the idea of a stay continuing. And to the legal point, the reason that there's a stay in place now isn't because this court or a motions panel looked at Mr. LeSignan's petition and declared it to satisfy the standard. It's an administrative stay. It was put in place to make sure that nothing transpired until you were able to hear the motion. So in order for that stay to continue at this point, it would no longer be an administrative stay. You would have to find that those factors that Mr. LeSignan began to outline were satisfied here. And we think that the factors fall down on our side for all four. The reason that the irreparable harm argument cannot carry the day here has to do with the measures that Mr. Solomon was referring to. Mr. LeSignan's irreparable harm argument, if you look at pages four and five of his reply, what he says is we are going to be irreparable harmed because we didn't get a chance to issue a 401 certification. The problem, though, is that, and this goes to your question, Judge Carney, about the sort of absoluteness of the statement. If you look at paragraph 133 of the certificate order, what FERC says at that paragraph is that we conclude that if constructed and operated, and I'm quoting now, so I'm reading, in accordance with Millennium's application and its supplements and in compliance with the environmental conditions in Appendix B to this order, which is at Exhibit X, F of the Krauss Declaration, our approval of this proposal will not constitute a major federal action significantly affecting the quality of the human environment. That is the statement that FERC made. And the reason that they made that statement is because of the lengthy list of environmental conditions that you can find at Appendix B. So with respect to each of the arguments that the DEC makes in its brief about potential harms, the possibility of harm, the issues to wetlands, the issues to streams, each of those have received, with DEC's comments actually motivating some changes in the way that Millennium was approaching these, each of those received very detailed treatment by the commission in the certificate order. So, for example, if you look at paragraph 48 of the certificate order, one of the things you'll find there is that FERC says in response to DEC's comments, Millennium made some changes to the way that it was approaching some of these wetlands issues and the way that it was going to drill under and around some affected streams. Paragraph 20 of the waiver denial order makes a similar point. So with respect to each of these harms, I think the problem that the DEC runs up against is they are speculating about harm while not taking into account the fact that all of their speculative harms, and they are only that, are answered and compensated and monitored for and looked over by the environmental inspectors and the Office of Energy Policy that has enforcement and, in fact, stop work authority over this project. Let me ask another question. So if we were to deny the stay pending further determination, a full briefing and so on, then you would need to be prepared to proceed at your risk and deal with an adverse decision potentially down the road. That is correct. Is that right? That is correct, and that is a risk that I think my client would have to take into account when deciding how to move forward. The representations that you have in front of you are that the urgency of the need to complete construction, particularly around that area surrounding the Eagle's Nest, is such that it must be completed before December 31st, which, as we explain in our opposition, means that we must commence around December 7th. That's the urgency that we're feeling here. But, yes, we would at that point be proceeding at our risk that on the merits, if we have an expedited consideration, that if this court were to rule against us on the merits, that that construction would have to stop and perhaps be reversed depending on how far along we were. But the reason that it's important for us now is because of the Eagle's Nest, because of that tree clearing window that we've also discussed. That is the reason why we can certainly agree to expedite it but not to the continued stay. All right. Mr. Lessig has a few minutes. He's got more than two minutes because we took three minutes from him earlier. So let's give him at least five. Now, Mr. Lessig, what's the problem with this putative schedule that you and I and the court had discussed, the possibility of expediting this? Let's assume for the argument that there's a stay granted pending this expedited briefing and an argument in late January and perhaps a decision as best we can at that time. That would satisfy you completely, right? That would satisfy the Department. That's right, Your Honor. Now, having heard opposing counsel raise the problem of the Eagle as well as other issues, what's your response to their concern for their interest in proceeding expeditiously pending the expedited appeal? The issue with the Eagle's Nest is that it requires them to get another, basically another permit authorization from the U.S. Fish and Wildlife Service. There's no reason to think that that authorization would be denied by the U.S. Fish and Wildlife Service, and there's no reason to think it would take them more than a few months to process it. It's all speculative. And at worst, the allegations are that it will delay construction of the pipeline until next year sometime, and we think that doesn't contravene the permanent environmental impact, which will occur immediately when construction begins. Again, without a stay, Millennium may be willing to proceed at their own risk, but they're also creating a risk to the state. Once they start cutting down trees, once they start excavating trenches to put this pipeline in, those damages aren't going to be irreparable, and that's the very definition of irreparable harm. FERC and Millennium also rely a lot on FERC's certificate and environmental assessment, but Section 401 is a separate authorization for the state to conduct its own review and impose its own conditions or grant or deny a Section 401 certification. Do you agree that some of the state's concerns and comments have been taken into account in FERC's certificate? Some of them have, Your Honor. However, FERC's environmental assessment and certificate both proceeded on the assumption that Millennium would obtain a Section 401 certification and comply with the conditions in that certification. In the environmental assessment at 40 to 41, and this is Crowns Exhibit D, quote, Millennium would construct water body crossings in accordance with state and federal permits, end quote. FERC identified the Section 401 certification and related state permits as being permits that were required for this project, and throughout the environmental assessment, it relied on Millennium complying with the Section 401 conditions. Maybe you could take a moment also and just address where you were going earlier about the likelihood of success on the merits, because the statute says one year from receipt, and you've been arguing that it's not to be literally read, but it's one year from receipt of a completed application and so on. I was wondering how you would address that. Of course. The statute actually says one year from receipt of a request for a 401 certification. FERC interprets request to mean written application, but that language is not in the statute. In fact, elsewhere in the statute, Congress used the word application. Was there an earlier request, an oral request or something? I mean, is there really any dispute that we're talking about a written application, which is what you received longer than a year ago? Well, the Department interprets request as requiring a complete request, a request that the Department can process essentially. That's also not in the statute. The Fourth Circuit held that receipt of a request is ambiguous and upheld the Army Corps' interpretation, which aligns with DEC's interpretation. So is it your position that you can keep on asking questions until you decide that it's complete? I mean, why didn't you just deny it when you came close to a year deadline and then, you know, without prejudice, to renewal? The issue is that it forces the Department to deny an application where the Department might prefer to work with the applicant to continue to develop the application. The Department's, of course, required— What prevents you from doing that, though? It's essentially just— This is a friendly denial, you know, because Congress— I mean, there is some suggestion that Congress intended to keep these moving and give the state adequate time, but still to keep them moving. Well, the issue is one that actually arises from 401 as well, which is that Section 401 also requires the state to create public notice and comment procedures for these applications. The Department requires a complete application before it can run through the notice and comment procedures. So it creates this situation where the Department might be faced with an application that was insufficient when submitted, was developed slowly over the course of a year. Kind of on the last day of that 365-day period, the applicant submits a bunch of materials. And at that point, there may be a technically complete application, but the Department can't do its notice and comment period at that point. So then it's faced with either denying an application that's facially complete and having to defend that on judicial review or granting an application when it's had no time to review the application or run through the notice and comment period. I see I'm out of time. I'm happy to answer any other questions you may have. You have no objection to granting the two motions to intervene? We have no objection, Your Honor. That's right. That will be so ordered and without intimating a view as to what it may mean on the merits. All right. I think we've got it. Thank you, Your Honor. Thank you very much. We'll reserve the decision.